IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



FILED

MAY 2 7 2014

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

STEPHEN F. BUZZELL, et al.,
                Plaintiffs,

v.                              Civil Action No. 3:13-CV-668-JRS

JP MORGAN CHASE BANK, et al.,
                Defendants.

## MOTION FOR JUDICIAL NOTICE

## MOTION FOR RELIEF FROM JUDGMENT, ORDER OR PROCEEDING TO SET ASIDE JUDGMENT, ORDER OR DECREE FOR FRAUD UPON THE COURT SO AS TO HAVE THE TRIAL OF THIS CASE TO GO FORWARD TO A JURY TRIAL OR IN THE ALTERNATIVE, A MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Stephen F. Buzzell and Kimberly B. Buzzell, pro-se, hereby submits their MOTION FOR JUDICIAL NOTICE according to Federal Rules of Evidence Article II, Judicial Notice Rule 201; and MOTION FOR RELIEF FROM JUDGMENT, ORDER OR PROCEEDING TO SET ASIDE JUDGMENT, ORDER OR DECREE FOR FRAUD UPON THE COURT according to Federal Rules of Civil Procedure Title VII Rule 60(b); 60(b)(3); and or 60(d)(3). Relief for fraud upon the court is not subject to the one year limit placed on relief under Rule 60(b)(3). See H. Lightsey & J. Flanagan, South Carolina Civil Procedure 407 (2d ed. 1985); and further Virginia Code 8.01-428(D) D. Other judgments or proceedings – "This section does not limit the power of the court to entertain at any time an independent action to relieve a party from any judgment or proceeding .... or to set aside a judgment or decree for fraud upon the court."

A perpetuated fraud, extrinsic fraud, inclusive of identity deception, malfeasance and nonfeasance, on the Court and the Plaintiffs by JP Morgan Chase Bank, As Trustee, (hereinafter referred to as "Defendant") – Case No. 3:13-CV-668-JRS, and their Counsel, with almost no regard for basic legal requirements or the rule of law, depriving the Plaintiffs the opportunity to be heard in a trial and on the merits of their claims against the Defendant.

The Defendant has subverted the integrity of the Court itself, and this fraud perpetuated by not only the Defendant, but the officers of the court, the Counsel of such Defendant so that the judicial machinery could not perform in the usual manner its impartial task of adjudging the Plaintiffs case that had been presented for adjudication. This perpetuated fraud, including identity deception, malfeasance and nonfeasance, has caused confusion as to the relationships between the Defendant and or privity of the Defendant and other case Defendants, not in privity, even confusing the Court into concluding incorrect relationships, defrauding the Court affecting the right for the Plaintiffs to have a trial on the merits of their claims. The Plaintiffs further request the Court to consider these facts and evidence to be a part of this case filed in the United States District Court to consider in this Motion for Relief From Judgment, Order or Proceeding to Set Aside Judgment, Order or Decree For Fraud Upon the Court So As To Have The Trial of This Case to go Forward to a Jury Trial or in the Alternative, A Motion for Summary Judgment.

## MOTION FOR JUDICIAL NOTICE

In accordance with Federal Rules of Evidence Article II, Judicial Notice Rule 201, Plaintiffs request that the Court take judicial notice of the following facts and documents. These facts and documents are presented to the Court as evidence as to the Fraud on the Court perpetuated by the Defendant, and their Counsel, preventing the Plaintiffs from having their

2

day in Court to present their case on the merits before a jury for a just and fair jury trial. The Plaintiffs are further clarifying the facts as to the identity of the Defendant, unraveling the perpetuated fraud and cover-up through identity deception, nonfeasance and malfeasance so that the judicial machinery can perform, as it should, in the usual manner of its impartial task of adjudging the Plaintiff's case that has been presented for adjudication.

I. It is a fact that JP Morgan Chase Bank, As Trustee (JP Morgan), at the time of the Foreclosure of September 2, 2008 was the only true Investor/Lender/Owner/Holder of the Note, entitled to receive payments under the Note. As stated within the Note dated July 1, 2003, **(See the Note and Attached Allonge as Exhibit1),** "The Lender or anyone who takes this Note by transfer and who is entitled to receive payment under this Note is called the "Note Holder."

    a. Evidence is the copy of the original Note with the Attached Allonge submitted to the Commissioner of Accounts, which indicates that JP Morgan Chase Bank, as Trustee was the last Investor/Owner/Holder of the Note. **(See the Note and Attached Allonge as Exhibit 1)**

    b. Evidence is the <u>FORECLOSURE CHECKLIST</u>, by Mervin C. Withers, Commissioner of Accounts, as to the final Accounting of the foreclosure of September 2, 2008 submitted by Samuel I. White, P.C. to the office of the Commissioner of Accounts, Mervin C. Withers on February 28, 2009. **(See the attached FORECLOSURE CHECKLIST as Exhibit 7):**

        i. In ¶1,within the <u>Foreclosure Checklist</u> , by the Commissioner of Accounts, the Commissioner acknowledges receiving the Original Note dated 7/1/03, inclusive of the Allonge as also noted whereby JP Morgan Chase Bank, as Trustee was the

last documented noteholder/owner/lender/investor. Evidence is the copy of the original Note inclusive of the Attached Allonge that was attested to that "The unpaid balance is credited with $290,708.86 as a result of foreclosure sale held on September 2, 2008 by Samuel I. White, P.C., Substitute Trustee, by Jason Hamlin, Vice President." **(See the Note and Attached Allonge as Exhibit 1) and (See the attached FORECLOSURE CHECKLIST as Exhibit 7):**

ii. In ¶1, within the <u>Foreclosure Checklist</u> , by the Commissioner of Accounts, the Commissioner, as to the Noteholder and endorsements, notes that First National Bank of Arizona was the first Noteholder and the final on the Allonge is JP Morgan Chase, as Trustee, as Noteholder. **(See the attached FORECLOSURE CHECKLIST as Exhibit 7)**

iii. In ¶1, the Commissioner noted that there is no evidence of any lost note or assignments. **(See the attached FORECLOSURE CHECKLIST as Exhibit 7)**

c. It is a fact with evidence that a letter of March 17, 2010 was sent from Mervin C. Withers, Commissioner of Accounts, to Samuel I. White, P.C., Trustee, after reviewing the foreclosing accounting submitted by Samuel I. White, P.C. on February 28, 2009 (above noted), whereby the Commissioner of Accounts did not approve the foreclosure as submitted. In ¶3 of the letter dated March 17, 2010, the Commissioner confirms that the last assignment of the Note was to JP Morgan Chase Bank, as Trustee, no other assignments were on the Allonge attached to the Note. **(See the letter of March 17, 2010 as Exhibit 2).**

d. <u>Evidence is the Defendant JP Morgan Chase Bank's Objections to Plaintiffs' Interrogatories</u> Dated April 22nd, 2014 ¶1. Whereby JP Morgan refers to themselves as the Investor as to the Buzzells property (Loan Number 7436354369). **(See the Attached as Exhibit 3)**

e. <u>Evidence is the Defendant JP Morgan Chase Bank's Objections to Plaintiffs' Interrogatories</u> Dated April 22nd, 2014 ¶9. Whereby JP Morgan answers the question "From the date that JP Morgan Chase was first contacted by a person or entity concerning Loan Number 7436354369, until present, state the name of each person or entity who had an ownership interest in the original Note at issue in this case....and state the approximate date that the person or entity acquired an ownership interest in the Note." JP Morgan Chase Bank's answer as stated, "In particular, please see attached Note (JPM/SFB1-3), Allonge (JPM/SFB 4), and Deed of Trust (JPM/SFB 5-19" **(See the Attached as Exhibit 3).** In reviewing each of these documents referred to "In particular,...", the last Noteholder/Owner was JP Morgan Chase Bank, As Trustee, as noted on the Allonge. It then would be a fact that on September 2, 2008, JP Morgan Chase Bank was the last Noteholder/Owner, entitled to receive payment under the Note.

2. It is a fact that the Lender in the Deed of Trust, and the original Note Holder of the Plaintiff's Note was First National Bank of Arizona. **(See the Note and Deed of Trust Attached as Exhibit 1 and 4)**

3. It is a fact that per the Allonge to the Note: 1) the original Lender/Owner/Investor/Note Holder assigned the Note to First National Bank of Nevada, 2) First National Bank of Nevada assigned the Note to Residential Funding Corporation, and 3) Residential Funding Corporation assigned the Note to JP Morgan Chase Bank, as Trustee, the final

endorsement on the Allonge to the Note and the final Lender/Owner/Investor/Note Holder of the Note. **(See the Attached Note and Allonge Attached as Exhibit 1)**

4. It is a fact that Homecomings Financial, LLC (Homecomings) and GMAC Mortgage (GMAC) both participated in Servicing the Plaintiff's Loan, both were to be Servicers for the Lender [First National Bank of Arizona] and or Lender's successors and assigns.

   a. Evidence being the letter from SIW to Mervin C. Withers, Esquire, Commissioner of Accounts, whereby SIW states "Homecomings Financial, LLC is the same company as GMAC Mortgage. Homecomings/GMAC has been designated to be the servicer for this loan." **(See the Letter dated April 13, 2010 As Exhibit 5).**

5. It is a fact that Homecomings and GMAC were never the Investor/Lender/Owner/Holder of the Plaintiff's Note but were Servicers only. **(See the Attached Note and Allonge Attached as Exhibit 1)**

6. It is a fact that Mortgage Electronic Registration Systems, Inc. (MERS) was never the Investor/Lender/Owner/Holder of the Plaintiff's Note, even though, Samuel I. White, P.C., MERS and GMAC/Homecomings claimed that MERS was the owner and noteholder, through fraud including fraudulent documents:

   a. **(See the Attached Note and Allonge Attached as Exhibit 1)** MERS endorsement as Investor/Lender/Owner/Holder is not on the Note and Allonge;

   b. **(See the Attached Substitute Trustee Attached as Exhibit 9)** The Substitute Trustee document created by SIW was endorsed by SIW's employee Karla K. Sickerott, who did sign as Vice President of MERS, fraudulently attesting that MERS was the "present owner" and "holder of the note";

c. **(See the Lost Assignment Affidavit Attached as Exhibit 5-A)**
The Lost Assignment document created by SIW was endorsed by
GMAC's employee Jeffrey Stephan, who did sign as Vice President
of MERS, fraudulently attesting that MERS was "the holder of a
certain Deed of Trust Note".

d. It is a fact that according to the Deed of Trust, MERS was a
separate corporation that was acting solely as a nominee for the
Lender [First National Bank of Arizona] and Lender's successors
and assigns. The beneficiary under the deed of trust (as
nominee). **(See the Deed of Trust Attached as Exhibit 4)** and
**(See Case 2:13-cv-07142-PSG-AS Filed 1/28/14 United States
District Court Central District of California, quoting "The Deed
also provides that Mortgage Electronic Registration Systems
("MERS") is "a separate corporation that is acting solely as a
nominee for Lender [United Pacific Mortgage] and Lender's
successors and assigns." "In the context of a nominee on a
deed of trust, this implies that the nominee is granted
authority as an agent to act on behalf of the Lender as to
administration of the deed of trust. See Fontenot v. Wells
Fargo Bank, N.A., 198 Cal. App. 4th 256, 270 (2011) ("A
'nominee' is a person or entity designed to act for another in a
limited role-in effect, an agent.") (citing Born v. Koop, 200 Cal.
App. 2d 519, 528 (1962))." Attached as Exhibit 11)**

7. It is a fact that there is no endorsement to MERS on the Allonge
attached to the Note. **(See the Attached Note and Allonge Attached
as Exhibit 1)**

        i. It is a fact that as of September 2, 2008, JP Morgan Chase
          Bank, as Trustee was the owner and holder of the Note

according to the Note and Allonge itself as submitted to the Commissioner of Account as to the foreclosure.

    ii. It is a fact that the Note was paid in full as was submitted to the Commissioner of Accounts as to the foreclosure sale held on September 2, 2008. **(See the Attached Note as Exhibit 1)**

8. It is a fact that after the Note was paid in full on September 2, 2008, the Note was cancelled. There was no Noteholder after JP Morgan Chase Bank, as Trustee as JP Morgan Chase Bank, as Trustee, was the final noteholder and owner of the note. There was no subsequent Noteholder/Owner/Investor of the Note **(See the Attached Note and Allonge Attached as Exhibit 1)**

9. It is a fact that an acknowledgment was sent to the Plaintiffs by GMAC and MERS, which it was factually stated that MERS was never the lender/owner/investor of the Plaintiff's loan. This acknowledgment came as a Secure Registered Envelope and notice RE: MIN (Mortgage Identification Number) 1001355-3274010063-9/Buzzell and was sent by GMAC Mortgage, specifically MERS-GMACM@gmacm.com, Kasey Sents – Customer Loan Administration – MERS Department to Kimberly Buzzell on October 20, 2011. This notice stated the following: "Residential Funding Corporation was the previous lender/servicer with GMAC as the subservicer. MERS was never the lender/owner/investor of this loan. This loan has paid in full." **(See the Secure Registered Envelope dated October 20, 2011 as Exhibit 6).**

    a. This MIN (Mortgage Identification Number) on the Secure Envelope above is the same MIN (Mortgage Identification Number) on the Deed of Trust, **(See the Deed of Trust, (top of the page under the title of the Document) Attached as Exhibit 4)**, and compare

to Exhibit 6 noticing the identical MIN **(See the Secure Registered Envelope dated October 20, 2011 as Exhibit 6).**

10. It is a fact that according to the Deed of Trust, the original Trustee was John S. Martin, P.C. **(See the Deed of Trust Attached as Exhibit 4).**

11. It is a fact that according to the Deed of Trust, ¶24 "...Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder." **(See the Deed of Trust Attached as Exhibit 4).**

12. It is a fact that a fraudulent and invalid <u>SUBSTITUTION OF TRUSTEE</u> document was prepared by Samuel I. White, P.C. as stated on the document **(See the Substitution of Trustee Attached as Exhibit 9).**

    a. It is a fact that the <u>SUBSTITUTION OF TRUSTEE</u> fraudulently states the following:

        i. "The SUBSTITUTION OF TRUSTEE was made between MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., herein called the Noteholder,...." . MERS was never the Noteholder of the Plaintiff's Note.

        ii. "NOW, THEREFORE, by virtue of the authority contained in the aforementioned deed of trust, the undersigned being the present owner and holder of the note secured thereby...". It is a fact that no where in the Deed of Trust is there any authority for MERS to be the owner and holder of the Note.

        iii. "IN WITNESS WHEREOF, the Noteholder has caused this Substitution of Trustee to be signed by its duly authorized officer on the 29[th] day of March 2008." MERS was not the Noteholder, but MERS' Vice President did sign the Substitution of Trustee, even without the authority as present owner and Noteholder to do so.

9

iv. The SUBSTITUTION OF TRUSTEE is signed and endorsed by Karla K. Sickerott, **"Vice President of Mortgage Electronic Registration Systems, Inc."** , not by an agent of MERS. **(emphasis added)**

b. According to the facts above stated, **Samuel I. White, P.C.** and **Mortage Electronic Registration Systems, Inc.**, through Samuel I. White, P.C. employee Karla K. Sickerott, and MERS Vice President, Karla K. Sickerott, both companies, did conspire to intentionally claim, fraudulently, on March 29, 2008, that MERS was the present owner and holder of the Note so as to substitute Samuel I. White, P.C. as Trustee whereby Samuel I. White, P.C. could claim that the Plaintiff's had irrevocably granted and conveyed to them as Trustee, in Trust, with power of sale, the Plaintiff's property known as 180 Tabbs Choice Road, White Stone, Virginia.

c. It is a fact that the fraudulent Substitute Trustee is invalid and fraudulent and therefore the borrowers.[the Plaintiffs], did not irrevocably grant and convey to Trustee, in trust, with the power of sale, of the Plaintiff's property.

d. It is a fact that the Plaintiffs, as borrowers, did not irrevocably grant and convey to Trustee, in trust, with the power of sale, of the Plaintiff's property as the Substitute Trustee could not have been valid so that SIW could become the Trustee and therefore the Deed of Foreclosure could not be valid as SIW could not grant or convey unto J. Carrington Burgess Revocable Trust the Plaintiff's property. **(See the Deed of Trust Attached as Exhibit 4)** and **(See the Deed of Foreclosure Attached as Exhibit 8)**

e. The Supreme Court of Virginia has recognized the importance of recorded instruments being properly executed. For example, the

agent of a principal that is executing a deed on behalf of the principal must execute the deed in a manner that makes it clear that he is acting in the name of the principal. Stinchcomb v. Marsh, 15 Gratt. 202 (Va. 1858); Martin v. Flowers, 8 Leigh 158 (VA. 1837). In Stinchcomb, the principal's agent granted a power of attorney to another agent, that second agent executing a deed on behalf of the first agent, but not in the name of the principal. The deed was held to be void. In Martin, the agent of a principal executed a deed in his own name, and did not indicate that he was acting as the agent for the principal. The deed was held to be void.

f. It is a fact from all of the facts and evidences above, that Samuel I. White, P.C. and MERS did not represent that JP Morgan Chase Bank, as Trustee was the noteholder or owner of the Note, but did fraudulently state and acted out that MERS was the present owner and holder of the note. JP Morgan Chase Bank, As Trustee true owner and holder of the note, failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services for them, as SIW and MERS both companies failing to represent JP Morgan Chase Bank, as Trustee, but actually acted fraudulently so as to control all aspects of a foreclosure without the authority to do so.

g. It is a fact that Mortgage Electronic Registration Systems, Inc. does not claim to be an Agent for the Owner/Lender/Holder of the Note, and did not claim to be a nominal beneficiary. It is a fact that MERS fraudulently claims to be present owner and holder of

11

the Note on March 29, 2008, six months prior to the foreclosure. JP Morgan Chase Bank, As Trustee true owner and holder of the note, failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services for them, as SIW and MERS, both companies, failing to represent JP Morgan Chase Bank, as Trustee, but actually acted fraudulently so as to control all aspects of a foreclosure without the authority to do so.

h. It is a fact that Samuel I. White, P.C. fraudulently began to collect debt on the Note on behalf of MERS (note the owner and holder of the note), who SIW fraudulently claimed was the present owner and holder of the note, not JP Morgan Chase Bank. SIW states the facts which would clarify that SIW was claiming that they had been substituted as a Trustee by MERS, Lender/Owner/Holder of the Note and were Agents as Debt Collectors for MERS, not the Investor/Lender/Owner/Holder of the Note, JP Morgan Chase Bank.

i. It is a fact that Samuel I. White, P.C. fraudulently claims that Mortgage Electronic Registration Systems, Inc., was the owner and holder of the note at the time of the foreclosure of September 2, 2008 as noted in the above paragraphs.

j. It is a fact that Samuel I. White, P.C., employed Karla K. Sickerott as Foreclosure Director of Operations **(See the Attached On-line Brochure page 5 As Exhibit 13)**

13. It is a fact that in the Letter dated March 17, 2010 from the Commissioner of Account to SIW as to the Trustee Account of the

foreclosure, eighteen months after the foreclosure of September 2, 2008, **(See the attached Letter of March 17, 2010 as Exhibit 2)**, the Commissioner of Accounts states within the letter the following:

    k. "Having reviewed your account, I cannot approve it."

    l. "Your account shows payment of the net proceeds of the sale to "MERS (Serviced by Homecomings Financial, LLC)." (emphasis added), this clearly indicating that at the time of the foreclosure of September 2, 2008, White was claiming fraudulently, MERS to be the Owner/Holder of the Note. MERS could not be and was not the owner/holder of the Note. There is no confirmation or evidence that MERS received payment of the net proceeds of the sale as they can not as they were not the Owner/Holder of the Note. (See the Note Attached as Exhibit 1), according to ¶1 "The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

    m. "A copy of your letter dated September 30, 2008, recites wire transfer of the net proceeds to GMAC Mortgage, LLC...". The Commissioner of Accounts further states within the letter of March 17, 2010, "The documents submitted with your account do not show a trail authorizing GMAC to receive the proceeds, nor is there any trail authorizing MERS to receive the proceeds." **(See the Attached March 17, 2010 Letter Exhibit 2)** and the Note on page 3 **(See the Attached Note Exhibit 1)**.

14. The Note is stamped on page 3 of 3 indicating that Jason Hamlin, Vice President of Samuel I. White, P.C., Substitute Trustee, stamped the Note paid after the Foreclosure of September 2, 2008. **(See the Attached Note Exhibit 1)**

15. It is a fact that within the April 13, 2010 Letter from SIW to Mervin C. Withers, Commissioner of Accounts, SIW, in response to the letter of

March 17, 2010 letter whereby the Commissioner states that "Having reviewed your account, I cannot approve it.", further referring to the fact that, "The documents submitted with your account do not show a trail authorizing GMAC to receive the proceeds, nor is there any trail authorizing MERS to receive the proceeds.", SIW attached a LOST ASSIGNMENT AFFIDAVIT claiming again, as they had in the SUBSTITUTION OF TRUSTEE document, that Mortgage Electronic Registration Systems, Inc. was the holder of the Deed of Trust Note, not the nominal beneficiary, agent for the note owner/holder of the note. **(See the Attached Letter of April 13, 2010 as Exhibit 5); (See the Attached Letter of March 17, 2010 as Exhibit 2); (See the Lost Assignment Affidavit as Exhibit 5-A); (See the Substitution of Trustee as Exhibit 9). (Further see ¶12 above)**

16. It is further a fact that in a letter dated June 23, 2010, in response to SIW's letter of April 13, 2010 whereby the LOST ASSIGNEMENT AFFIDAVIT had been attached, the Commissioner states, "You have provided a "Lost Assignment Affidavit", dated March 31, 2010, executed by an officer of MERS, averring the note was assigned to MERS by Morgan but that the original assignment is now lost....., I will accept the affidavit as proof that MERS was the noteholder at time of the foreclosure and will file a copy with my report and your account." **(See the Attached Letter dated June 23, 2010 As Exhibit 14)** and **(See the Letter of April 13, 2010 and the Lost Assignment Affidavit as Exhibit 5 and 5-A)**

17. It is a fact that the Lost Assignment Affidavit is a fraudulent affidavit signed by Jeffrey Stephan, an employee of GMAC/Homecomings, signed by Jeffrey Stephan as Vice President of MERS. This Affidavit was submitted to the Commissioner of Accounts so as to have an approval of the foreclosure of September 2, 2008 when according to the facts as

to the foreclosure, there would not have been an approval. This false Lost Assignment Affidavit stated facts that were not known to Jeffrey Stephan and were further, untrue statements. (See the Plaintiff's Complaint ¶40-¶42). Also, see the case of US Bank, National Association, As Trustee v James W. Renfro, et al Case No. CV-10-716322, Judge Nancy Margaret Russo presiding In the Court of Common Please Cuyahoga county, OHIO October 27, 2010 **(See the Attached case as Exhibit 18)** and **(See the Lost Assignment Affidavit as Exhibit 5-A)**. (See the above ¶'s as to the evidence of this fact).

18. It is a fact that within the Letter dated June 23, 2010, the Commissioner of Accounts did copy the Plaintiffs on said letter and stated, "Interested parties shall have 15 days from the date of filing to file exceptions thereto with the Court." **(See the Attached Letter dated June 23, 2010 As Exhibit 14).**

19. It is a fact that the Plaintiffs filed their Exceptions and Objections to the Commissioner of Accounts on July 6, 2010 **(See the Attached Exceptions and Objections as Exhibit 15)**

    a. It is a fact that within the Exceptions and Objections above mentioned facts were stated that are extensive and as follow:

        i. Within the Exceptions and Objects, pages 2-5 the Plaintiffs state that "MERS was not the Note Holder and no Note or Allonge alludes to MERS in any way as the Not Holder." Also the following cases were addressed:

            1. Supreme Court of Nebraska 270 Neb. 529; 704 N.W.2d 784; 2005 Neb. LEXIS 177 October 21, 2005, "in its order, the district court accurately characterized MERS' services"; and LaSalle Bank Nat. Ass'n v. Lamy, 824 N.Y.S.2d 769, 2006 WL 2251721 (Sup.2006)stating "A nominee of the owner of a note and mortgage may not

effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the  nominee."

ii. Within the Exceptions and Objections, page 5, the Plaintiffs stated, "Mr. Withers, further, as stated to you, we did in fact mail a letter to Samuel I. White, P.C. and GMAC Mortgage and Homecoming Financial, LLC requesting account; payoff information and further to clarify the existence of an Original Note and the proper authority to bring action against us prior to the foreclosure. Not one of the parties above mentioned wrote or corresponded with us..."

iii. It is a fact that no accounting, cure amount or payoff amount was supplied to the Plaintiffs by the note holder/owner of the note or their agents as to the September 2, 2008 foreclosure.

iv. "The advertising was not according to Virginia Code § 55-59.1 as the dates of the advertisement within the foreclosure notice were not correct causing us to believe that the foreclosure was delayed or called off. Remember the Notice states the advertising to be August 11, 2008 and August 18, 2008. This led us to believe the foreclosure was called off – A misrepresentation of the facts as to the advertising." **(See the Attached Letter from Samuel I. White., P.C., as debt collector, dated August 6, 2008 with the Attached  Trustee Sale Notice As Exhibit  16)** – The Trustee Sale Notice states that the Notice of Sale was to be advertised  "one a week for two(2) weeks August 11, 2008 and August 18, 2008" **(See the Trustee Sale Notice page 2**

of **Exhibit 16)**, and the Rappahannock Record Certificate of Publication indicates that the Notice of Sale was advertised "August 21, 2008 and August 28, 2008" **(See the Rappahannock Record Certificate of Publication Attached as Exhibit 17)**.

v. The Exceptions and Objections has been given a case number in the Lancaster County Circuit Court – Case #CL12000114-00, and is an open active case with no ruling as of this date as to the foreclosure. **(See the Attached Exceptions and Objections as Exhibit 15)**

20. JP Morgan knows they were the true Noteholder/Owner/Investor of the Plaintiff's Note and JP Morgan and SIW, did know, or should have known that MERS was never the Noteholder and could not be the Noteholder of the loan, but perpetuated a fraud on the Court, not only creating the Affidavit, but submitting the Affidavit to the Commissioner of Accounts for the sole purpose in having the foreclosure approved based on the fraudulent Affidavit, **when the foreclosure would be void, ab initio. (emphasis added).**

21. It is a fact that SIW did fraudulently, without authority, prepare a Deed of Foreclosure, recorded September 19, 2008, whereby SIW did fraudulently grant and convey with SPECIAL WARRENTY, the Plaintiffs property to J. Carrington Burgess Revocable Trust on September 2, 2008. This non-judicial foreclosure should have been void ab initio as SIW and MERS did execute a fraudulent Substitute Trustee with fraudulent information as to the authority granting said Substitute Trustee. The Substitute Trustee could not be valid. Further, the Defendants failed to supply the Plaintiffs with the requested Accounting, Cure Amount, Payoff Amount, Creditor information prior to foreclosure, and surely, since SIW, Trustee and Debt Collector, GMAC

and Homecomings, as Servicers, did not know the entity as to the Owner/Holder of the Note, and rejected and disregarded JP Morgan as the true Noteholder/Investor/Owner, no foreclosure should have taken place.

22. These are facts that at the time of foreclosure of September 2, 2008, neither, SIW, GMAC Mortgage, nor Homecomings were in privity with JP Morgan Chase Bank, as true Lender, Investor, Holder of the Note, but in fact fraudulently perpetuated an ongoing fraud claiming that the party who was to receive payment of the net proceeds of the sale was MERS, Serviced by GMAC and Homecomings Financial, LLC.

23. No evidence indicates that JP Morgan Chase Bank received the proceeds as the true Owner/Holder/Investor of the Note.

24. It is a fact that JP Morgan Chase Bank, As Trustee, nor MERS, nor SIW as Trustee or Debt Collector, nor GMAC, nor Homecomings gave notice to the Plaintiffs as to what amount they owed to cure any alleged default or any payoff amount to keep their home from foreclosure. The Defendants could not supply any notice whereby any of the above entities supplied the Plaintiffs, in writing or otherwise the cure amount or payoff amount to have the opportunity to reinstate or payoff their loan according to the Deed of Trust.

This Judicial Notice does show the facts that must be considered by the Court as to the Defendant and their Counsel and the perpetuated Fraud on the Court, extrinsic and intrinsic fraud, and cover-up that continues even to this day so as to subvert the integrity of the Court itself, and this fraud perpetuated by not only the Defendant, but the officers of the court, the Counsel of such Defendant, so that the judicial machinery could not perform in the usual manner its impartial task of adjudging the Plaintiff's case that has been presented for adjudication. This perpetuated fraud, including identity deception, malfeasance and

nonfeasance, has caused confusion as to the relationships between the Defendant JP Morgan and previous case Defendants, that were not Lenders/Owners/Investors of the Plaintiffs Loan and fraudulently, did not mention or represent JP Morgan before any court that JP Morgan was the true Owner/Investor/Holder of the Note. Privity can not be claimed between JP Morgan and the previous case Defendants, as the facts and evidence above shows. This Fraud on the Court is confusing the Court into concluding incorrect relationships, defrauding the Court affecting the right for the Plaintiffs to have a trial on the merits of their claims. The Plaintiffs further request the Court to consider these facts and evidence to be a part of this case filed in the United States District Court to consider in this Motion for Relief From Judgments, Order or Proceedings to Set Aside Judgments, Orders or Decrees For Fraud Upon the Court, and make Declarations as to the facts and evidence within this Judiciary Notice, so as to have the trial of this case to go forward to a jury trial or in the alternative, a motion for summary Judgment.

## ARGUMENT AS TO THIS MOTION FOR RELIEF FROM JUDGMENTS, ORDERS OR PROCEEDINGS TO SET ASIDE JUDGMENTS, ORDERS OR DECREES FOR FRAUD UPON THE COURT SO AS TO HAVE THE TRIAL OF THIS CASE TO GO FORWARD TO A JURY TRIAL OR IN THE ALTERNATIVE, A MOTION FOR SUMMARY JUDGMENT

JP Morgan Chase Bank, As Trustee and their Counsel, were served, and a Complaint was filed on September 3, 2013, CASE NO. CL13-60, Stephen F. Buzzell, et al., Plaintiffs (hereafter referred to as Buzzell), v. JP Morgan Chase Bank, et al., Defendants (hereafter referred to as JP Morgan).

An Order was issued by the Honorable James R. Spencer, Senior U.S. District Judge on a Motion for Judgment on the Pleadings (ECF No. 21) by JP Morgan. The Conclusion of the Court was that "Because the defense of claim preclusion applies, Defendant's Motion for Judgment on the Pleadings will be GRANTED."

JP Morgan Chase Bank, As Trustee, and their Counsel have and continue to perpetuate a fraud, on the Court as to the relationships between them and previous case defendants for the sole purpose of hindering the Plaintiffs from having their day in Court, subverting the integrity of the Court itself, and this fraud has been perpetuated by not only the Defendant, but the officers of the court, the Counsel of such Defendants, so that the judicial machinery can not perform in the usual manner its impartial task of adjudging the Plaintiffs case that have been presented for adjudication, never to have had a trial as to the foreclosure of their property. This perpetuated fraud including identity deception, malfeasance and nonfeasance, causing confusion as to the relationships between the Defendants and or privity of certain Defendants in another active case in State Court has confused the Courts, concluding incorrect relationships, defrauding the Court affecting the right for the Plaintiffs to have a trial on the merits of their claims.

Wherefore, the Plaintiffs are requesting with these Motions before the Court that the Court take **Judicial Notice** as to the Fraud on the Court perpetuated by the Defendants and their Counsel and as this Fraud on the Court was extrinsic, give relief from all Judgments, Orders or Proceedings to set aside Judgments, Order or Decrees for Fraud Upon the Court, further declaring that the Plaintiffs Complaint is not barred by claim preclusion so as to have the trial of this case go forward to be heard by a jury or a Summary Judgment be awarded by the Court for the Plaintiffs in the amount of $1,500,000.00 for the losses due to the actions by the

20

Defendants as to the Breach of Contract; Constructive Fraud and the continued Fraud on the Court which is prevalent in this Complaint.

Understandable, the Court has been mislead by the Defendants into misidentifying that a Fraud on the Court has occurred and that the perpetuated fraud by the Defendants and their Counsel continues to this day, covering up facts that have been stated within the Judicial Notice as well as continuing to bring confusing non-facts to the Court so as to keep the Plaintiffs from having their day in Court as to the facts that the foreclosure of September 2, 2008 must be held void and that the Plaintiffs should be made whole as to their losses.

JP Morgan and their Counsel knowing that GMAC, Homecomings and MERS were not the "Lenders" in the active State Court case, brings to the attention of this Court that this was stated by the previous court Judge so that it would appear that the Plaintiffs have brought an action already against the Lenders. There are several statements made by the Defendants, a Fraud on the Court to deceive the Court, see the Defendant's Reply Brief in Support of Motion for Judgment on the Pleadings, page 2, "...the previous suit was dismissed as to the *prior noteholders* and servicers upon their demurrer...". There is absolutely no truth in this statement as to *prior noteholder*. This was added to defraud the Court into confusion as to the identity of the noteholders of the Plaintiff's Note. MERS, GMAC, Homecomings, none of which were the noteholders, and never were the Noteholders as the facts indicate they are not included on the Note, as prior Noteholders, as JP Morgan knows as they do in fact know their identity as the Investor/Noteholder/Owner of the Plaintiff's Note. MERS was a nominal beneficiary as stated within the Deed of Trust, only if they were directed by the true Noteholder/Owner, as MERS can not own Notes as stated within the facts above and can not act on their own to foreclose, but must be directed by the true

21

Lender/Owner/Investor of the Loan. "MERS was never the lender/owner/investor of this loan." as stated within the Judicial Notice above. (Also see the Plaintiff's Complaint ¶37 through ¶43)

JP Morgan Chase Bank, As Trustee (JP Morgan), at the time of the Foreclosure of September 2, 2008 was the only true Investor/Lender/Owner/Holder of the Note as facts indicate as noted in ¶1 above. This is stated within the (Compl. ¶10 "...JP Morgan was the final Note Holder and Owner of the Note according to the original Note and attached Allonge." JP Morgan Chase Bank, As Trustee knows their identity, but also knows that their Agents committed Fraud on the Court and submitted fraudulent documents, on the Courts which is still being perpetuated at this time. As stated above in the Judicial Notice, JP Morgan Chase Bank, As Trustee was the Noteholder/Owner/Investor, but to foreclose on the Plaintiff's property, SIW, MERS and GMAC/Homecomings all claimed that MERS was the "present owner and holder of the note", disregarding that JP Morgan had anything to do with the foreclosure, including the rightful party to receive the funds from the foreclosure. And recall, not one of the entities, gave a notice with the amount to cure or the payoff amount and foreclosed anyway. In this, the Defendant JP Morgan and their Counsel states within the Defendant's Reply Brief in Support of Motion for Judgment on the Pleadings, page 2, "The breach of contract claim is a red herring, as Plaintiffs could not have reinstated the loan even if they had received notice. Therefore, they cannot establish damages." You see, it is true the Defendants did not give reinstatement or payoff information to the Plaintiffs, denying them the right to keep their home according to the Deed of Trust and the laws governing such foreclosure. The Defendants, therefore claim that the Plaintiffs could not reinstate their loan. This is not true as the Plaintiffs were ready, willing and able to reinstate their loan. What a horrible excuse that they can

22

therefore breach the contract, not giving notices to the Plaintiffs, claiming, "could not have reinstated the loan even if they had received notice".

There can be no privity between JP Morgan Chase Bank, As Trustee as the Defendant claims, as JP Morgan Chase Bank's Agents were committing Fraud and Fraud on the Court, claiming that MERS was the present owner and noteholder, therefore SIW, GMAC/Homecomings were all claiming fraudulently to be Agents for MERS so that SIW and GMAC would have complete control of the foreclosure as their employees were acting as Vice Presidents of MERS, having complete control, not submitting to the authority of JP Morgan Chase Bank, As Trustee. And surely, JP Morgan Chase Bank surely failed to devote to its foreclosure processes, adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training and did engage in unsafe and unsound banking practices. Surely, as to this foreclosure, there could be no privity between JP Morgan Chase Bank and SIW, GMAC/Homecomings and MERS. Neither SIW, GMAC/Homecomings or MERS even mentioned JP Morgan Chase Bank. The Plaintiff only first saw their name on the Note after GMAC/Homecomings and MERS, not acting as Agents for JP Morgan, were dismissed from the active, ongoing Breach of Fiduciary against SIW in State Court.

Again, understandable that the Court has a lot of questions as to when JP Morgan was the holder of the Note, it can be simply answered by the facts above and the conclusion that Fraud on the Court has confused the status of the parties. In the Memorandum Opinion dated April 24, 2014 by Judge James R. Spencer, it is stated, "Further, the Deed of Trust provides that "MERS is the beneficiary under this Security Instrument", and goes on to say "with the right to act on the behalf of JP Morgan as Note holder and Lender." In the Deed of Trust it specifically states, "solely as nominee for Lender and Lender's successors and assigns)...This Security

23

Instrument secures to **Lender**: (1) the repayment of the Loan...". MERS can not act on behalf of itself, but only with the right to act on behalf of the Lender.... MERS is the Agent for the Lender. As to this foreclosure of the Plaintiffs, MERS, claims to be the present owner and holder of the note, not as the nominal beneficiary or Agent for JP Morgan, but claims to be the owner, acknowledged by the signature of Karla K. Sickerott, MERS Vice President. MERS was not the Lender/Owner/Holder of the Note or Investor.

Further, the Defendants within their <u>Defendant's Reply Brief in Support of Motion for Judgment on the Pleadings</u>, page 6 and 7, again in committing a fraud on the Court, is misleading the Court into a maze of "If JP Morgan purchased the Note prior to the alleged improper conduct...; and If JP Morgan purchased the Note subsequent to the alleged improper conduct, suggesting to the Court misleading abstract suggestions, knowing all along, when they owned the Note and their identity as to the foreclosure. The Court even quoted the above suggested fraud on the Court in coming to an incorrect conclusion that as the Defendant and their Counsel claim, "Either way, JP Morgan is in privity with prior defendants and the third prong is satisfied." As Judge James R. Spencer states on page 8 of the Opinion, "Depending upon when JP Morgan became the holder of the Note, JP Morgan is either: (1) a Note holder and principal of its "agents" the Lenders in the previous action, or (2) a successor-in-interest to the prior "Lenders" by virtue of its purchase of the Property." There is another option not stated which is the true order of events, but this known option is left out as it would entail the truth that a Fraud on the Courts and a Fraud on the Plaintiffs with continued cover ups by the Defendants, and the previous defendants which continues to be perpetrated by JP Morgan, MERS, White, GMAC and Homecomings, it is this: There was no privity between JP Morgan, MERS, or GMAC/Homecoming. JP Morgan was the holder of the Note at the time of

24

the foreclosure of September 2, 2008, as the above facts and evidence indicates in ¶1 and ¶3 above and the Note was not sold or transferred to MERS. MERS was never the Noteholder/Owner/Lender/Investor of the Plaintiff's Note as the above facts and evidence indicates in the Judicial Notice. MERS can not be the Noteholder/Owner/Lender/Investor, but could only have acted, if directed to do so by the true Noteholder/Owner/Lender/Investor, as a nominal beneficiary, in name only as a "straw man". This is the beginning of the maze of fraudulent acts committed by the Defendant, JP Morgan and their Agents, all committing fraud and submitting fraudulent documents. Even while JP Morgan was the Noteholder/Owner/Lender/Investor, SIW's employee, Karla K. Sickerott, as instructed by SIW, did fraudulently substantiate the Substitute Trustee document by signing as VP of MERS, claiming that MERS was the "present owner and holder of the Note", giving the fraudulent authority to SIW to sell the Plaintiff's home, acting as Trustee. Further SIW did act as debt collector, but would have been debt collector for MERS, claiming to be the Noteholder/Owner/Lender/Investor, who was not truly the Noteholder/Owner/Lender/Investor. SIW, being an Agent for JP Morgan, fraudulently claimed that MERS was the Noteholder/Owner/Lender/Investor, knowing that JP Morgan was the true Noteholder/Owner/Lender/Investor; even disregarding the terms of the Deed of Trust and failing to give Notice as to the amount to cure any default and the amount of payoff to the Plaintiffs and disregarded informing the Plaintiffs of the Noteholder/Creditor information as none was given. Now further, as to the perpetuated fraud, when the foreclosure was not approved by the Commissioner of Accounts, Mervin C. Withers, SIW, as attorney, did prepare a Lost Assignment, sent to GMAC/Homecomings to acknowledge as true, and did have Jeffrey Stephan, GMAC employee and also signing as MERS Vice President, attest to facts that he did not know

25

as well as this acknowledgment by Jeffrey Stephen was not acknowledged in front of a Notary. Again, SIW, GMAC/Homecomings and of course, MERS were fraudulently attesting that MERS was the owner of the Note when in fact they were not the owner of the Note. This was a Fraud on the Court and the Plaintiffs as Mervin C. Withers, Commissioner of Accounts, upon receiving the fraudulent, defective Assignment, approved the foreclosure eighteen months after the foreclosure of September 2, 2008. It could not be as JP Morgan claims through their Counsel (2) that JP Morgan was the successor-in-interest to the prior "Lenders" as JP Morgan Chase Bank, as Trustee was the final Noteholder/Owner on the Allonge, the prior Lender was Residential Funding, not MERS, GMAC, or Homecomings. It also can not be (1) a Noteholder and principal of its "agents" the Lenders in the previous action as there were no Lenders in the previous action represented, as MERS, GMAC and Homecomings were not the Lenders and further, MERS, GMAC and Homecomings, also SIW did not acknowledge that JP Morgan Chase Bank, as Trustee was the Noteholder but that MERS was the Owner/Noteholder through the actions of their own employee Karla K. Sickerott, signing as VP of MERS; and GMAC's employee, Jeffrey Stephan, also claiming in the Lost Assignment Affidavit above noted **(See Lost Assignment Affidavit Attached as Exhibit 5-A)**, that MERS was the Owner/Noteholder through the actions of their own employee Jeffrey Stephan, signing again as VP of MERS. And of course, as it is stated, GMAC and Homecomings were Servicers for the Lender, who they claim and acknowledge was MERS. With this Fraud on the Court and the Plaintiffs, there is no privity and JP Morgan Chase Bank, as Trustee could not have been represented by SIW, MERS, GMAC or Homecomings in privity, but in fact were perpetuating a Fraud, caught up in the Fraud and continue with the Fraud even until this day as even JP Morgan Chase Bank, as Trustee, is caught up in the fraud and has only upon answering the Plaintiffs,

26

interrogatories, stated that they were the Investor – this is the only confirmation that the Plaintiffs have ever received except the facts obtained from the original Note and Allonge, as well as letters and evidence obtained after June 2010. JP Morgan, was the true Owner/Holder of the Note/Investor at the signing of the Substitute Trustee as well as the Foreclosure of September 2, 2008. There can be no "significant enough legal relationship" present between JP Morgan and MERS, GMAC or Homecomings. Judge Spencer says, "Typically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan", but it is true that in this case, a Fraud on the Court and the Plaintiffs that has been continually perpetuated that has disconnected the typical into a cover up of a Fraud, whereby, to have complete control of a foreclosure process, SIW, GMAC/Homecomings and MERS (through employees of SIW and GMAC/Homecomings signing as Vice Presidents), have, even though they were actually Agents for JP Morgan Chase Bank, as Trustee, failed to represent JP Morgan Chase Bank, as Trustee, as JP Morgan Chase Bank failed to give oversight of their agents to ensure the proper administration of the foreclosure process as to the Plaintiff's foreclosure.

As the United States Comptroller found, **(See Exhibit 12, page 3, "(2) In connection with certain foreclosures of loans in its residential mortgage servicing portfolio, the Bank: (a) filed or caused to be filed in state and federal courts affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in may**

cases, they were not based on such personal knowledge or review of the relevant books and records; (b) filed or caused to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary; (c) litigated foreclosure proceedings and initiated non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time; (d) failed to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes; (e) failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and (f) failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services. (3) By reason of the conduct set forth above, the Bank engaged in unsafe or unsound banking practices."

Further, the Defendant JP Morgan and or their Agents, did not only commit the wrong doings as to the Plaintiffs foreclosure, but they did agree to pay into a National Mortgage Settlement Administrator a sum of money as to the damages that were incurred by certain borrowers that were harmed by their actions. This settlement was not to civil claims made by the harmed borrowers, but was a small settlement as to their unsafe and unsound banking practices found by the authorities. The Plaintiffs were a recipient of this small gesture as to JP Morgan's wrongdoing, but this small gesture in no way is restitution for the harm caused by the Defendant and their Agents, they should have had control of. **(A Copy of the Check in the amount of $1,484.21 is attached from the National**

**Mortgage Settlement Administrator See Exhibit 20)**. The Plaintiffs were found to have been harmed by the Defendant's actions.

It is true that SIW, did claim in their brochure **(See Attached Brochure as Exhibit 13)**, with excited authority, that they "handle their loans on a cradle to grave basis throughout the state of Virginia". Cradle to grave is what SIW did, commence in the "cradle" as they fraudulently initiated the foreclosure on the Plaintiffs home by substituting themselves as the Trustee through their employee, Karla K. Sickerott (signing as MERS VP); took authority as a debt collector, but failed to give the required notices according to law and the Deed of Trust, failed to give the Plaintiffs the name of the creditor they were collecting for; the cure amount as to the alleged debt, and the payoff amount; then advertised improperly quoting in the Notice of Sale two dates that the advertisement of the foreclosure was to be in the newspaper, but of course the advertisement was not on either date and even the weeks were incorrect causing the Plaintiffs to believe that the foreclosure was called off; while the Plaintiffs were having conversations with GMAC employees as to a workout, SIW foreclosed – taking the Plaintiffs or their home to the grave. SIW, with excited authority, took the Plaintiff's foreclosure from cradle to grave through Fraud, Fraud on the Court and continue to hinder justice as the Plaintiff's foreclosure to this day as not been approved but remains active as to the Exceptions and Objections filed within a timely manner, July 6th, 2010, **(See Exceptions and Objections filed as Exhibit 15).**

Thus, it is that rare case in which JP Morgan Chase Bank, As Trustee and MERS, GMAC/Homecomings, **were not in privity** for the purpose of claim preclusion, and therefore, claim preclusion can not apply to this case as the Defendants did perpetuate a FRAUD ON THE COURT AND THE PLAINTIFFS by their actions have hindered the Plaintiffs from having their case heard on the merits of their case. MERS, GMAC/Homecomings did not

29

acknowledge that JP Morgan had any correlation to the foreclosure and in no way represented JP Morgan, and further, there was no trial as of this date.

Further, this Court believes the first element of Claim Preclusion was met because the 2010 Letter Opinion by the Lancaster Court states that the Court dismissed "the Lenders" from the previous action and that it was a final adjudication on the merits as to those parties. The case in Lancaster County is an ongoing case against SIW, a Breach of Fiduciary. Secondly, as the Court dismissing "the Lenders", there were no "Lenders" as the Defendants that were dismissed, GMAC, Homecomings and MERS, as well as their Counsel allowed a Fraud on the Court to be perpetuated through nonfeasance and identity deception, knowing that MERS, GMAC and Homecomings, none of which were the "Lenders", as the Court stated in the April 15, 2010 Opinion Letter, "This letter rules upon the Demurrer of GMAC, Homecomings and MERS (collectively "the Lender")..." and further, "The Lender demurs on the ground that as a creditor of the Buzzells it owes them no fiduciary duty as alleged." and further, "Moreover, "the law is well settled...that creditors...are not debt collectors and are statutorily exempt from liability under the FDCPA". MERS, GMAC/Homecomings were all Agents for the true Lender/Owner/Investor, JP Morgan Chase Bank, as Trustee. None of which were the Lenders or creditors and yet they committed a Fraud on the Court through nonfeasance and they each did commit identity deception, knowing their position and identity as to the Plaintiffs foreclosure, but allowed the Court to make the error as to their identity and position as non-creditors, so that they would be dismissed from the Plaintiffs case in the Lancaster Circuit Court. Further, this case can not be held to be heard on the merits by this Court, as the Judge in the Lancaster Court, clearly stated within his Opinion of April 15, 2010, "Standard for a Demurrer", which states, "Upon consideration of a

demurrer, the Court accepts all facts alleged in or reasonably inferable from the plaintiff's pleading to be true. The Court **does not evaluate and decide on the merits of a claim...**" **(emphasis added).** The Complaint in Lancaster is an ongoing case and has not been dismissed.

As stated and claimed in the Complaint now pending in the United States District Court in ¶55 "The Buzzells did rely on the Defendants and or their Agents that at all times the Defendants would be acting in good faith, not committing fraud through the misrepresentation of material facts as parties to the Deed of Trust." The entire foreclosure and the Complaints filed in State Court, this current Complaint being removed to this United States District Court, have been rampant with fraud, and as SIW states in their brochure, "from cradle to grave" and the Plaintiffs have been hindered from having their case heard and being made whole from the actions of the Defendants and their perpetuated Fraud on the Court as well as the Plaintiffs.

And it is true that the Defendants in the previous cases, knowing the Lancaster Court was confused through again Fraud on the Court, allowed the Court through nonfeasance, knowing that the Court made an incorrect identification of the parties, allowed the perpetuated fraud to continue without correcting the Court. The Plaintiffs were also confused as at the time of the Hearing and Order of May 28, 2010, even after the Defendants GMAC, Homecoming and MERS were dismissed, as the Plaintiffs had not been allowed to review the foreclosure accounting and had not seen who the Noteholder/Investor was until sometime after June 2, 2010. The Allonge was not seen; the Affidavit was not seen and the letters from and to the Commissioner of Accounts as to the foreclosure had not been seen. In this case, the Defendants failed to give to this Court the true Order of the Court as to the Defendants, GMAC Mortgage, LLC, Homecomings Financial, LLC and Mortgage Electronic Registration Systems, Inc.'s

31

Demurrer. The Defendant, JP Morgan Chase Bank, As Trustee and their Counsel submitted an Order not endorsed by the Court or the parties, except for Donna Hall, Counsel for SIW. We have attached the Order, with Objections dated May 28, 2010. This Order submitted to the Court was objected to as noted on the Order signed by the Judge on May 28, 2010 with objections by the Plaintiffs, **(See the Attached Order of May 28, 2010 as Exhibit 19).**

Samuel I. White, P.C., (SIW), according to the facts above stated in ¶12, was substituted on March 29, 2008 by who they fraudulently claimed and stated was the present owner and holder of the note, Mortgage Electronic Registration Systems, Inc., not JP Morgan Chase Bank. Accordingly, SIW was fraudulently acting as Trustee and Debt Collector, as Agent for MERS, not JP Morgan Chase Bank. (Compl. ¶32. 1. "On March 29, 2008, .... The appointment of Trustee was made by Samuel I. White, P.C.'s employee and Operations Manager Karla K. Sickerott. Further, Karla K. Sickerott, did execute the <u>Substitution of Trustee</u>, signing as Vice President of MERS, ..... alleging MERS was the "present owner and holder of the note" averring authority as Noteholder and Owner of the Buzzell's Note...") and (Compl. ¶51.1. "Within the Substitution of Trustee document dated March 29, 2008 signed by Karla K. Sickerott, employee of White and as Vice President of MERS, it was fraudulently stated within the document that MERS was the present owner and holder of the note when in fact JP Morgan was the Owner and Holder of the Note, evidenced by the Note and Allonge itself attached as Exhibit B").

Again, by evidence above in ¶10.j. and ¶12, and upon submitting the Accounting to the Commissioner of Accounts, in March of 2010, eighteen months after the foreclosure, the Commissioner of Accounts on March 17, 2010 stated within a letter to SIW as to the Accounting submitted, "Having reviewed your account, I cannot approve it"; and further, Your account shows payment of the net proceeds of the sale to "MERS (Serviced by Homecomings Financial, LLC).". There were questions as to the identity

of the noteholder and servicers by the Commissioner of Accounts. SIW continued the guise that they were Trustee and Agent as Debt Collector for MERS as owner and holder of the Note, not JP Morgan Chase Bank.

SIW, after the Commissioner of Accounts rejected the Account submitted by SIW, by evidence above in ¶13 and ¶18, did write a letter dated April 13, 2010 to Mervin C. Withers, Commissioner of Accounts, SIW, in response to the letter of March 17, 2010 letter whereby the Commissioner states that "Having reviewed your account, I cannot approve it.", further referring to the fact that, "The documents submitted with your account do not show a trail authorizing GMAC to receive the proceeds, nor is there any trail authorizing MERS to receive the proceeds.", SIW attached a <u>LOST ASSIGNMENT AFFIDAVIT</u> claiming again, as they had in the <u>SUBSTITUTION OF TRUSTEE</u> document, that Mortgage Electronic Registration Systems, Inc. was the holder of the Deed of Trust Note.

To substantiate that SIW was stating and claiming to the Commissioner of Accounts, an Officer of the Court, that SIW was claiming that MERS was the owner of the Note at the time of the foreclosure, and that SIW was representing MERS as the Owner of the Note, the Commissioner of Account stated within a letter of June 23, 2010, in response to SIW's letter of April 13, 2010 whereby the <u>LOST ASSIGNEMENT AFFIDAVIT</u> had been attached, the Commissioner states, "You have provided a "Lost Assignment Affidavit", dated March 31, 2010, executed by an officer of MERS, averring the note was assigned to MERS by Morgan but that the original assignment is now lost....., **I will accept the affidavit as proof that MERS was the noteholder at time of the foreclosure and will file a copy with my report and your account." (See the Attached Letter dated June 23, 2010 As Exhibit 14) (emphasis added).** Also see (Compl. ¶54. 2. "A Lost Note Affidavit was made by the Defendants with misrepresentations as to the Owner and Holder of the Note, which was relied on by

o

the Commissioner of Accounts to approve a foreclosure that had not been approved upon submittal of the final accounting by White."

There can be no privity between JP Morgan and MERS or SIW as neither MERS or SIW recognized or acknowledged that JP Morgan was the Noteholder/Owner/Holder of the Note, but in fact were committing a fraud on the Court by submitting fraudulent and misleading documents to deceive the Court, the Commissioner of Accounts. MERS can never be the Owner/Holder of the Note as they are only a nominal beneficiary according to the Buzzell's Deed of Trust, and even if they are noted on the Deed of Trust, unless MERS, as nominal beneficiary is directed by the true Note Holder/Owner/Lender, they can not act at all as to the Buzzell's Note and Deed of Trust. They would only be an Agent if requested to act.

There can be no privity between GMAC Mortgage (GMAC), Homecomings Financial, LLC (Homecomings) and JP Morgan Chase Bank as evidenced by facts submitted above in ¶4 and ¶5. Homecomings and GMAC both participated in Servicing the Plaintiff's Loan, both were Servicers for the Lender [First National Bank of Arizona] and or Lender's successors and assigns. In a letter dated April 13, 2010 from SIW to Mervin C. Withers, Esquire, Commissioner of Accounts, SIW clarifies and states to the Commissioner of Accounts, the following: "Homecomings Financial, LLC is the same company as GMAC Mortgage. Homecomings/GMAC has been designated to be the servicer for this loan." **(See the Letter dated April 13, 2010 As Exhibit 5).** As we understand from the evidence above, SIW in the same letter of April 13, 2010, submitted the Lost Assignment Affidavit which states that MERS is the Noteholder/Owner, to the Commissioner of Account. The Commissioner of Account clearly in his letter of June 23, 2010, accepts these statements as to the Noteholder/Owner being MERS, and now the Servicers as stated by SIW, being Homecomings/GMAC were Servicers of MERS, at the time of the foreclosure of September 2, 2008, to reiterate the Commissioner of Account's reliance

34

to approve the foreclosure and exceptions and objections needing to be filed by the Buzzells, **"I will accept the affidavit as proof that MERS was the noteholder at time of the foreclosure and will file a copy with my report and your account."**

Accordingly, SIW, GMAC and Homecomings must not have felt it necessary to know who the Owner/Holder of the Note/Lender was on September 2, 2008, as they were acting on their own to foreclose on the Buzzell's Property. SIW, creating the Substitute Trustee with their employee, Karla K. Sickerott, acting as a MERS Vice President, claiming within the Substitution of Trustee that MERS was the present owner and holder of the Buzzell's Note; GMAC's employee, Jeffrey Stephens, claiming within the Lost Assignment Affidavit that MERS was the owner and holder of the Buzzell's Note, and according to SIW, Homecomings being the same company as GMAC also was claiming within the Lost Assignment Affidavit that MERS was the owner and holder of the Buzzell's Note (Compl. ¶ 41.1. "On March 31, 2010, as to the Buzzell's Loan No. 7436354369, File No.: 43153-08, Jeffrey Stephen, signing as Vice President of MERS, ... being an employee of ... GMAC .... did swear that MERS was the holder of the Note when in fact JP Morgan was the holder and owner of the Note."

JP Morgan Chase Bank, As Trustee and their Counsel, do know and have known that MERS, GMAC and Homecomings were not the Lenders as to the Buzzell's Note and Deed of Trust on September 2, 2008 as to the foreclosure, as JP Morgan Chase Bank, As Trustee would of course know that they were the true and only Lender/Investor/Owner/ Noteholder of the Buzzells Note on September 2, 2008, and yet JP Morgan Chase Bank, As Trustee and their Counsel submitted to this Court an Opinion Letter of April 15, 2010 claiming that the Plaintiffs have a case against the "Lenders" as to the foreclosure whereby the "Lenders" had already been dismissed in Virginia State Court and referred to the April 15ᵗ, 2010 Opinion Letter. Now again, JP Morgan Chase Bank, As Trustee and their Counsel know that the dismissal of the "Lenders" in the State Court was based on a fraud on the Court through nonfeasance, and identity deception by GMAC, Homecomings and MERS

and their Counsels, as GMAC, Homecomings and MERS and their Counsel said nothing to the Court to correct the Court as to their identity as Servicers. The Order made May 28, 2010 attached even states, "(1) as set forth in this Court's April 15, 2010 Opinion Letter, the Lenders' Demurrer to Plaintiffs' Bill of Complaint is granted in its entirety" Now the Buzzells as Plaintiffs did object to the Order and stated within their objection, being a part of the Order, "Was not with prejudice; MERS is not a lender; Asked for the right to Amend prior to dismissing defendants or complaint with Original Complaint.; Asked for the right to Amend at Court Hearings.; Plaintiffs are pro-se and believe that a right to Amend complaint prior to dismissing defendants or Complaint......". In the April 15, 2010 Opinion Letter, the Court stated, "The Lender demurs on the ground that as a creditor of the Buzzells it owes them no fiduciary duty as alleged." And further, Court stated, "The allegations are that the Lender is the creditor of the Buzzells and the Buzzells are the debtors of the Lender. No fiduciary duty is owed by the Lender to the Buzzells from this relationship." And further the Court even goes on to say, "Moreover, "the law is well settled...that creditors...are not debt collectors and are statutorily exempt from liability under the FDCPA". It was clear that the Court was dismissing GMAC, Homecomings and MERS on a perpetuated fraud on the Court and through nonfeasance and identity deception, the Buzzells were unable to have their Complaint against GMAC, Homecomings and MERS heard on the merits. Even the Court stated within the Opinion Letter as to his Opinion as to the "Standard for a Demurrer", "The Court **does not** evaluate and decide the merits of a claim, it only tests the sufficiency of factual allegations to determine whether the plaintiff's pleadings state a cause of action. West Alexandria Properties, Inc. v. First VA. Mtg. & Real Estate 'Inv. Trust, 221 Va. 134, 267 S.E.2d 149 (1980), Board of Supvrs. v. Southland Corp., 224 Va 514, 297 S.E.2d 718 (1982). No right to Amend to include GMAC, Homecomings and MERS was given to the Buzzells. GMAC, Homecomings and MERS did commit a Fraud on the Court, allowing the Court to be deceived as to their identity as well as allowed the court to be deceived into believing they were the Lenders, when they in fact were not.

In submitting this April 15, 2010 letter to this Court, JP Morgan and their Counsel are again committing a Fraud on the Court, extrinsic fraud, hindering the Plaintiffs to have their day in Court as to JP Morgan's Breach of the Contract and

Constructive Fraud. In referring to the April 15, 2010 letter, JP Morgan and their Counsel are perpetuating a fraud as to the role of GMAC, Homecomings and MERS, in the foreclosure of the Buzzells home. JP Morgan Chase Bank, and their Counsel is aware that GMAC, Homecomings and MERS are not Lenders and that JP Morgan is the only Lender as to the Buzzells' foreclosure of September 2, 2008.

Again, a perpetuated Fraud on the Court was occurring as to the Note Holder/Owner/Investor with an Interest and who was the party to the Note and Deed of Trust. No Accounting was available or creditor information until June 2, 2010 when the Plaintiff's had their first opportunity to review the Commissioner of Accounts records. GMAC, Homecomings, and MERS were not the Lenders of the Plaintiff's Note at the time of the foreclosure of September 2, 2008 and were never the Lenders/Noteholders or Owners of the Plaintiff's Loan.

The Lancaster Circuit Court is in litigation against SIW at this time for a Breach of Fiduciary. There is a Plaintiffs' Motion for Reconsideration outstanding and has not been ruled on at this time. (See the attached Plaintiffs' Motion for Reconsideration).

Res Judicata, according to the Opinion of the Court, is where the defendants must show: (1) that the prior judgment is a final and valid judgment; (2) that the parties are identical or are in privity with each other; and (3) the the claim made in the subsequent lawsuit arises out of or relates to the same occurrence, conduct, or transaction upon which the prior lawsuit was based." Id. The Plaintiffs disagree with the Court that the first element is met because the 2010 Letter Opinion regarding the Lenders is a final adjudication on the merits as to those parties.

In the April 15, 2010 Opinion, the Court clearly states within the Opinion that "The Court does not evaluate and decide the merits of a claim, it only tests the sufficiency of factual allegations to determine whether the plaintiff's pleadings state a cause of action. West Alexandria Properties, Inc. v. First VA. Mtg & Real Estate Inv. Trust, 221 Va. 134, 267

S.E.2d 149 (1980), Board of Supvrs. v. Southland Corp, 224 Va 514, 297 S.E.2d 718 (1982).

In *Assurance Data, Inc. v. John Malyevac*, No. 121989 (Sept. 12, 2013), the Supreme Court of Virginia, on appeal, restated that the purpose of a demurrer is to determine whether a complaint states a cause of action upon which relief may be granted and that, unlike its role in deciding a motion for summary judgment, the court does not evaluate the merits of a claim on demurrer. Because a demurrer cannot be used to decide on the merits whether a restraint on competition is enforceable, we will reverse the circuit court's judgment. This case is an example in which the trial court "'incorrectly . . . short-circuited litigation pretrial and . . . decided the dispute without permitting the parties to reach a trial on the merits.'" CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 24, 431 S.E.2d    277, 279 (1993) (quoting Renner v. Stafford, 245 Va. 351, 352, 429 S.E.2d 218, 219 (1993)); see also Breeding v. Hensley, 258 Va. 207, 214, 519 S.E.2d 369, 372 (1999).

The Lancaster Case was to be a Trial by Jury as demanded by the Plaintiffs. No opportunity was given to the Plaintiffs to reach a trial on the merits as to GMAC, Homecomings, and MERS and the Plaintiffs still have not had a trial on the merits of the case as to SIW as a continued fraud on the Court has been perpetuated, even to this day, covering up their many fraudulent actions and deceiving the Court into a state of confusion. Extrinsic fraud is "fraud that induces a person not to present a case or deprives a person of the opportunity to be heard." The theory behind why the court may grant relief for extrinsic fraud is that such fraud prevents a party from fully exhibiting and trying his or her case, and consequently there was never a real contest before the court. Extrinsic fraud is collateral or external to the trial of the case. Stated another way, the fraud may be extrinsic if the defrauded party did not

have access to the disputed information and did not have knowledge of the inaccuracies at the time of trial.

http://www.charlestonlaw.net/attorneys-in-charleston/.

Virginia Code Section 8.01-428(D) provides that an order entered by a court may be "set aside" if that court's ruling was based on "fraud upon the court." Unlike most other post-trial remedies, this rare procedure has no time limit as to when it must be filed. Further, the Lancaster Court disallowed the Plaintiffs to have a trial by jury as to the Defendants GMAC, Homecomings, MERS to have facts stated within the Complaint heard but decided on only pleadings and the exhibits attached. No Hearing allowed discussion of such allegations. The Plaintiffs did file an Objection to the Order, submitted on the Order on May 27, 2010 preserving claims. **(See the attached Order signed by the Court on May 28, 2010.)**

The Plaintiffs submit to the Court that the Defendants have committed a perpetuated Fraud on the Court and a Fraud on the Plaintiffs. The Plaintiffs truly believe that they have a right to have a jury trial as to the foreclosure of their property and the injuries from such wrongful foreclosure and fraudulent actions. The Defendant's actions in the case were a Breach of Contract and they have committed Constructive Fraud upon the Plaintiffs and this Fraud on the Court, a cover-up and perpetuated fraud. The Plaintiffs have not had the opportunity to litigate in any case as to the foreclosure that occured on September 2, 2008. Or in the alternative, request the Court for a Motion for Summary Judgment in the amount of $1,500,000.00 plus interest and costs and whatever else the Court finds to be profitable to the Plaintiffs as to the actions by the Defendants so as to make the Plaintiffs whole. The Plaintiffs further ask that a Declaration be made as