UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

STEPHEN F. BUZZELL, *et al.*,

                  Plaintiffs,

v.

JP MORGAN CHASE BANK, *et al.*,

                  Defendants.

Civil Action No. 3:13–CV–668

## **MEMORANDUM OPINION**

THIS MATTER comes before the Court on a "Motion for Judicial Notice, Motion for Relief from Judgment, Order or Proceeding to Set Aside Judgment, Order or Decree for Fraud Upon the Court So as to Have the Trial of This Case to Go Forward to a Jury Trial or in the Alternative, a Motion for Summary Judgment" ("Motion") (ECF No. 31) by Stephen F. Buzzell and Kimberly B. Buzzell ("Plaintiffs"). Defendant JP Morgan Chase Bank ("JP Morgan" or "Defendant") opposes the Motion. This matter is also before the Court on a Second Motion for Judicial Notice and a Motion to Add Treble Damages filed by Plaintiffs (ECF No. 37). For the reasons stated below, the Motion for Reconsideration will be DENIED, and the Motions for Judicial Notice, the Motion for Summary Judgment, and the Motion for Treble Damages will be DENIED AS MOOT.

    **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

        **A.  The Note and the Deed of Trust**

On or about July 1, 2003, Plaintiff Stephen F. Buzzell took out a loan for $288,000 as evidenced by a promissory note ("Note"). Repayment of the Note was secured by the property at 180 Tabbs Choice Road, White Stone, Virginia ("Property") pursuant to a deed of trust ("Deed of Trust"), to which both Plaintiffs are parties.

The terms of the Note provides that Plaintiffs

> promise to pay $288,000.00 . . . plus interest, to the order of the Lender. The Lender is First National Bank of Arizona. . . . [Plaintiffs] understand[] that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'

(Compl. Ex. B, ¶ 1). The Deed of Trust provides that the Note can be sold one or more times without prior notice to Plaintiffs, which may result in a change in the entity—known as the Loan Servicer—that collects payments due and performs other mortgage loan servicing obligations. (Compl. Ex. C, ¶ 20). The Deed of Trust provides that there might be one or more changes of the Loan Servicer unrelated to a sale of the Note. (*Id.*) Under the Deed of Trust, the Lender "may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder." (*Id.* ¶ 23). Further, "[w]ithout conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law." (*Id.*) Finally, the Deed of Trust provides that Mortgage Electronic Registration Systems, Inc. ("MERS"), is the beneficiary under this Security Instrument and that

> [Plaintiffs] understand[] and agree[] that MERS holds only legal title to the interests granted by [Plaintiffs] in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument

(*Id.* 4). At some point, the Note was transferred to Residential Funding Corporation, who then transferred the Note to Defendant. On March 29, 2008, Samuel I. White, PC ("SIW") was named Substitute Trustee of the Deed of Trust pursuant to a Substitution of Trustee document ("Substitution of Trustee"), which was endorsed by an agent of MERS. SIW then began to collect debt on the Note on behalf of Defendant.

### B. The Foreclosure

On January 2, 2008, Homecomings Financial ("Homecomings") sent Mr. Buzzell a letter indicating that the account was past due and that he "may cure the default by paying the total amount due, indicated above, within thirty (30) days from the date of this letter." The letter also

states that "[u]nless we received full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings." (Def.'s Mem. Supp. Mot. J. on Pleadings Ex. 1).

On February 4, 2008, Homecomings Financial sent Mr. Buzzell a letter indicating that the account was past due and that he "may cure the default by paying the total amount due, indicated above, within thirty (30) days from the date of this letter." The letter also states that "[u]nless we received full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings." (*Id.* Ex. 2).

SIW mailed Plaintiffs at least three Notices of Trustee Sale for the Property on April 18, July 24, and August 6, 2008. (Def.'s Mot. J. on Pleadings Exs. 3, 4, 5). On August 25, 2008, Plaintiff Stephen F. Buzzell mailed a letter to Homecomings Financial, discussing the impending foreclosure. (*Id.* Ex. 6).

On September 2, 2008, SIW conducted a foreclosure sale, and a third party, the J. Carrington Burgess Revocable Trust, purchased the Property for $294,000. Subsequently, the IRS redeemed the Property from the J. Carrington Burgess Revocable Trust, as the Property was also subject to a tax lien. Following the redemption sale, the IRS gave Plaintiffs a check for $125,703.58.

### C. Plaintiffs' Previous Lawsuit

#### 1. Litigation before the Lancaster Circuit Court

On October 22, 2008, Plaintiffs filed suit against GMAC Mortgage, LLC ("GMAC"), Homecomings, MERS, SIW, and the J. Carrington Burgess Revocable Trust in the Circuit Court of Lancaster County ("Lancaster Circuit Court"). In the Complaint, Plaintiffs alleged that GMAC, Homecomings, MERS, SIW, and the J. Carrington Burgess Revocable Trust committed fraud, misrepresentation, and breach of fiduciary duty. GMAC, Homecomings, and MERS ("Lenders") filed a joint Demurrer ("Lenders' Demurrer") and SIW filed a separate demurrer. On April 15,

2010, the Lancaster Circuit Court granted the Lenders' and SIW's demurrers by letter opinion ("2010 Letter Opinion"). In granting the Lenders' Demurrer, the Lancaster Circuit Court found that no fiduciary duty existed between Plaintiffs and Lenders. The Lancaster Circuit Court also held that the Plaintiffs' fraud and misrepresentation claims failed because they could not plead fraud with particularity and could not allege a false misrepresentation. The Lancaster Circuit Court granted SIW's demurrer, but granted Plaintiffs leave to amend their complaint as to SIW only. Plaintiffs submitted an amended complaint that was rejected by the Lancaster Circuit Court as inconsistent with its previous order.

Plaintiffs then filed a second amended complaint consistent with the court's order. The Lancaster Circuit Court eventually sustained SIW's demurrer with respect to all but one of Plaintiffs' claims in their second amended complaint. The Lancaster Circuit Court noted in a February 19, 2013 Letter Opinion ("2013 Letter Opinion") that "[a]s a result of sustaining Demurrers to each such Complaint all of the lender defendants (GMAC Mortgage, LLC, Homecomings Financial, and [MERS] collectively "Lenders") have been dismissed from this suit." (Def.'s Mem. Supp. Mot. J. Pleadings Ex. 14, at 1).

On May 23, 2014, the Lancaster Circuit Court granted in part Plaintiffs' motion for reconsideration in a letter opinion. (Def.'s Reply Mot. for Recons. Ex. 2, at 2) ("2014 Letter Opinion").[1] First, the Lancaster Circuit Court held that it would overrule SIW's demurrer regarding whether the Substitute Trustee document appointing SIW as Trustee was invalid because MERS executed it as Noteholder when, according to Plaintiffs, JP Morgan was the Noteholder. (*Id.* at 2-3). Second, the court held that it would overrule SIW's demurrer regarding the Buzzells' claim that SIW breached its fiduciary duty by interfering with their right to reinstatement or redemption by not returning their phone calls requesting information on their

---

[1] The Court will take judicial notice of this document because it is a state court document that is in the public record. *See Wren v. Cigna Healthcare of Va., Inc.*, No. 7:05-CV-00344, 2006 WL 344801, at *2 (W.D. Va. Feb. 15, 2006).

4

loan. (*Id.* at 3). The court reasoned that there were numerous allegations showing that Plaintiffs were in protracted and detailed discussions and negotiations with the lender concerning their loan, either by payoff or reinstatement. (*Id.*) Third, the Lancaster Circuit Court declined to reconsider whether SIW was liable for violations of statutory provisions of the Fair Debt Collection Practices Act. (*Id.* at 4). Fourth, the court held that it would overrule SIW's demurrer regarding whether SIW breached its fiduciary duty of fairness to them by misstating the newspaper advertisement dates for the foreclosure of the home, thus, misleading Plaintiffs into thinking that the sale was cancelled. (*Id.* at 4-5). The court reasoned that the relevant newspaper ran the advertisements on the wrong weeks. (*Id.* at 5). Fifth, the court declined to further reconsider Plaintiffs' catchall argument encompassing all of their claims in their second amended complaint. (*Id.*) The Lancaster Circuit Court, however, confirmed that the Lenders had been dismissed from the case with prejudice. (*Id.* at 2) ("Pursuant to the original complaint other defendants, including all lender defendants, were dismissed with prejudice.").

### 2. Dispute Regarding the Final Account

The acting Commissioner of Accounts, Mervin C. Withers, filed a First & Final Account/Trustee's Sale of Real Estate ("Final Account") in the Clerk's Office of the Circuit Court of Lancaster County on June 23, 2010. In the Final Account, the Commissioner noted that SIW presented to him a copy of the Notice of Trustee Sale, the original Deed of Trust, the Note, the certificate of advertisement by the *Rappahanock Record*, vouchers substantiating the disbursements, and the Lost Note Affidavit. On March 31, 2010, Jeffrey Stephen, acting as Vice President of MERS, signed an affidavit ("Lost Note Affidavit") stating that the Deed of Trust was assigned from JP Morgan to MERS, and that the original document evidencing the assignment was lost, misplaced, or destroyed. (Compl. Ex. E). The Lost Note Affidavit stated that MERS was the holder of the Note and was signed by Jeffrey Stephen as Vice President of MERS. Plaintiffs contend that the Lost Note Affidavit was provided after April 19, 2010. The Parties dispute whether Plaintiffs timely objected to the Final Account. Plaintiffs contend that the foreclosure of

the Property has not been approved but remains active due to their timely objections filed July 5, 2010. Plaintiffs further report that an active case regarding the matter was opened on July 6, 2010, which remains open to this day under case number CL12000114-00.

### D. Litigation in This Court

This matter was removed to this Court on September 30, 2013. The case was stayed as to Defendant Residential Funding Corporation on November 21, 2013. Defendant's Motion for Judgment on the Pleadings was filed on March 24, 2014. Plaintiffs' Opposition was filed on April 14, 2014. Defendant replied on April 21, 2014. This Court Granted JP Morgan's Motion for Judgment on the Pleadings on April 29, 2014. *Buzzell v. JP Morgan Chase Bank*, No. 3:13-CV-668, 2014 WL 1691361 (E.D. Va. Apr. 29, 2014).

Plaintiffs filed a Motion for Reconsideration on May 27, 2014. Defendant opposed Plaintiffs' Motion for Reconsideration on June 10, 2014. Plaintiffs then filed a notice of appeal on May 29, 2014 and a second Motion on June 19, 2014 (ECF No. 37), which will be construed as a reply. The very same Motion (ECF No. 37) contained a second motion for judicial notice and a motion for treble damages.

## II. LEGAL STANDARD

### A. Rule 60(b)

The party seeking relief under Rule 60(b) must cross the "initial threshold," showing "'timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'" *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.,* 993 F.2d 46, 48 (4th Cir. 1993) (quoting *Werner v. Carbo,* 731 F.2d 204, 207 (4th Cir. 1984)). Once the movant has satisfied these requirements, he or she must then satisfy at least one of the six grounds for relief provided in Rule 60(b). Fed. R. Civ. P. 60(b).

A motion under Rule 60(b)(3) for fraud upon the court must be made within a reasonable time no more than a year after the entry of the judgment or order or the date of the proceeding. Fed. R. Civ. P. 60(c)(1); *see also Fox ex rel. Fox v. Elk Run Coal Co., Inc.*, 739 F.3d

131, 135 (4th Cir. 2014) ("[T]his one year limit balances the competing interests of relieving an aggrieved party from the hardships of an unjustly procured decision against the deep '[r]espect for the finality of judgments . . . engrained in our legal system.'" (quoting *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters,* 675 F.2d 1349, 1354–55 (4th Cir. 1982))).

### B. Rule 60(d)

"The savings clause in Rule 60(d)(3) permits a court to exercise its inherent equitable powers to obviate a final judgment after one year for 'fraud on the court.'" *Fox ex rel. Fox*, 739 F.3d at 135-36. The Fourth Circuit explained that fraud on the court is construed narrowly and that perjury and fabricated evidence are not adequate to permit relief as fraud on the court because "the legal system encourages and expects litigants to root them out as early as possible." *Id.* at 136 (quoting *Great Coastal Express, Inc.*, 675 F.2d at 1356-57). The savings clause is, instead, limited to situations such as "bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Express, Inc.*, 675 F.2d at 1356.

### III. Discussion

The doctrine of *res judicata* may properly be raised in a motion for judgment on the pleadings. *See Durham v. Somerset Cnty., Md.*, No. CIV.A. JKB-12-2757, 2014 WL 279683, at *2 (D. Md. Jan. 22, 2014). Because this Court is considering the preclusive effect of a Virginia state court decision, it must adhere to Virginia's legal principles concerning claim preclusion. *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) ("The Full Faith and Credit Act, 28 U.S.C. § 1738, . . . requires [a] federal court to give the same preclusive effect to a state-court judgment as another court of that State would give." (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005))). Prior to 2006, defendants in the Commonwealth of Virginia were required to establish that claim preclusion applies by establishing the "identity of the remedies sought, identity of the cause of action, identity of the parties, and identity of the quality of the

persons for or against whom the claim is made." *State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E.2d 766, 769 (Va. 2001); *see also Brooks*, 626 F.3d at 200.

Effective July 1, 2006, Rule 1:6 of the Virginia Supreme Court was enacted to clarify the elements of claim preclusion:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit . . . .

Va. Sup. Ct. R. 1:6(a). Rule 1:6 was intended to adopt a broader transactional approach to the doctrine of claim preclusion where the "identity of the remedies and identity of legal theories are not required for the application of the doctrine." *Columbia Gas Transmission, LLC v. David N. Martin Revocable Trust*, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011) (citing *Martin–Bangura v. Commonwealth Dep't of Mental Health,* 640 F. Supp. 2d 729, 738 (E.D. Va. 2009)). As such, "[u]nder Virginia law, to establish res judicata, the defendants must show: (1) that the prior judgment is a final and valid judgment; (2) that the parties are identical or are in privity with each other; and (3) that the claim made in the subsequent lawsuit arises out of or relates to the same occurrence, conduct, or transaction upon which the prior lawsuit was based." *Columbia Gas Transmission, LLC*, 833 F. Supp. 2d at 558.

Plaintiffs now argue that claim preclusion is not present because the Plaintiffs' prior state court case is clearly ongoing. As noted previously, a judgment sought to be used as the basis for the application of the doctrine of claim preclusion must be a final judgment. *Faison v. Hudson*, 417 S.E.2d 302, 304 (Va. 1992). A judgment is not final for the purposes of claim or issue preclusion when it is being appealed or when the time limits fixed for perfecting the appeal have not expired. *Id.* The Supreme Court of Virginia has stated that "in the absence of a statutory provision to the contrary, a judgment is not final for purposes of appeal if it is rendered with regard to some but not all of the parties involved in the case." *Wells v. Whitaker,*

151 S.E.2d 422, 432 (Va. 1966). However, the "severable interest rule" allows for the appeal of an interlocutory order in certain circumstances. *Thompson ex rel. Thompson v. Skate Am., Inc.*, 540 S.E.2d 123, 126 (Va. 2001). "Under this rule, a final adjudication of a collateral matter that addresses separate and severable interests can be appealed only when the appeal cannot affect the determination of the remaining issues in the case, even if the adjudication is reversed." *Thompson*, 540 S.E.2d at 126. "In such instances, the order may be appealed either at the time of its entry or when the trial court enters a final order disposing of the remainder of the case." *Id.* In sum, where an interlocutory order is appealable under the severable interest rule, the order is final.

In *Rutter v. Oakwood Living Centers of Virginia, Inc.*, the Supreme Court of Virginia held that the severable interest exception did not apply because, although some defendants were dismissed from the action, the lower court's adjudication one defendant did not concern "a collateral matter, separate and distinct from the general subject of the litigation." 710 S.E.2d 460, 464-66 (Va. 2011). Specifically, the *Rutter* court noted that the interests of all four defendants were joint and not severable. *Id.* at 465. The Supreme Court of Virginia applied the severable interest rule in a similar case in *Thompson*. 540 S.E.2d at 126. In *Thompson*, the Supreme Court of Virginia held that plaintiff's claims against parents were severable from those of a minor because the causes of action were separate and an appeal and reversal of one claim would not affect the other. *See id.*

This matter is more similar to *Thompson* than *Rutter*. Here, the interests of the Lenders were severable from the interests of SIW as Trustee, as evidenced by the fact that the Lancaster Circuit Court dismissed these defendants with prejudice. As a result, the Lenders have not been before the Lancaster Circuit Court since 2010. Even if Plaintiffs had appealed, a determination of the liability of the Lenders would not affect the liability of the Trustee. Plaintiffs asserted fraud, misrepresentation, and breach of fiduciary duty claims to both classes of defendants separately. Therefore, the finality prong of claim preclusion has been met because the Lancaster

9

Circuit Court dismissed Plaintiffs' claims against the Lenders with prejudice and the Plaintiffs did not timely appeal. *See* Va. Sup. Ct. R. 1:1.

As stated previously, privity is present between JP Morgan and the Lenders in the state court case. Depending upon when JP Morgan became the holder of the Note, JP Morgan is either: (1) a Note holder and principal of its "agents," the Lenders in the previous action, or (2) a successor-in-interest to the prior Lenders by virtue of its purchase of the Property. Either way, a significant enough legal relationship is present between JP Morgan and the perceived Lenders in the previous action to warrant the invocation of protection under claim preclusion. Typically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan. Thus, "it will be a rare case in which those two parties are not perfectly identical with respect to successive suits arising out of the same transaction." *R.G. Fin. Corp. v. Vergara–Nunez,* 446 F.3d 178, 187 (1st Cir. 2006); *see also Jones v. First Franklin Loan Servs.*, No. 3:10-CV-360-FDW-DSC, 2011 WL 972518, at *5 (W.D.N.C. Mar. 15, 2011) (holding that a mortgage servicer and a lender were in privity for the purposes of claim preclusion).

The third element requiring that both claims arise from the same transaction or occurrence is also met because Plaintiffs' allegations in this second action are based on the same cause of action involved in the earlier proceeding; namely, the foreclosure of the Property.

Because the defense of claim preclusion applies and this Court did not err, Plaintiffs' Motion for Reconsideration will be DENIED.

### IV. CONCLUSION

For the above reasons, the Motion for Reconsideration will be DENIED, and the Motions for Judicial Notice, the Motion for Summary Judgment, and the Motion for Treble Damages will be DENIED AS MOOT.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and to Plaintiffs.

//

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___31st___ day of July 2014.